Following a trial by jury, the defendant, Isaac Desir, appeals from his convictions of assault and battery by means of a dangerous weapon in violation of G. L. c. 265, § 15A (b ), and reckless endangerment of a child in violation of G. L. c. 265, § 13L. The jury were warranted in finding that the victim, who is the defendant's biological daughter, lived with the defendant from the age of five to sixteen. During these years she was subjected to physical, mental, and emotional abuse by the defendant, including being struck with a belt buckle. The victim was admitted to the hospital for hypothermia on three occasions, two times in 2015 and once in 2012. This was the result of being forced by the defendant to shovel snow from the home's driveway, sidewalk, and stairs for hours at a time while wearing only a T-shirt and pants. The victim did not disclose any of this to hospital personnel because the defendant was always present and she was afraid. The defendant does not dispute that the evidence was sufficient to warrant the jury's verdicts.
The defendant argues for the first time on appeal that certain testimony by Dr. Peter Sell, a board certified pediatrician, who was asked by the hospital to consult on the victim's case, was improperly admitted. Dr. Sell testified that Shapiro Syndrome, a working diagnosis developed by the neurologists treating the victim, is a rare condition in which a patient has periodic hypothermia and "doesn't seem to have a rhyme or reason why it comes and goes." Dr. Sell also testified that Shapiro Syndrome was a "diagnosis of exclusion" assigned to people who have symptoms of hypothermia that cannot be explained by other medical reasons. Finally, when asked about the likely cause of the victim's hypothermia, Dr. Sell opined that based on the victim's disclosure about being forced to remain outside the home shoveling snow without proper clothing, her condition was more consistent with environmentally induced hypothermia than with Shapiro Syndrome. A trial judge has broad discretion to determine whether a witness is qualified to offer an expert opinion. See Commonwealth v. Mahoney, 406 Mass. 843, 852 (1990). In the case of a board certified pediatrician, the expert witness is not required to be qualified in a specific subspecialty to offer an opinion concerning the most likely cause of a child's symptoms. See id. The defendant's reliance on Commonwealth v. Guinan, 86 Mass. App. Ct. 445 (2014), is misplaced. There, the accident reconstruction expert witness reached a conclusion as to the cause of the collision on the basis of information about the software in the vehicle's power steering system that was beyond his training and experience. Id. at 451.
Likewise there was no error or abuse of discretion in the admission of testimony by Dr. Sell that he was a member of the hospital's child protection team, a multidisciplinary group of professionals who answer questions by other health care professionals about whether a child was the victim of abuse or neglect. Dr. Sell's testimony, to which there was no objection, did not convey to the jury the contents of any conversations he may have had with others who were involved in treating the victim and that may have suggested that the victim had in fact been abused. See Commonwealth v. Rosario, 430 Mass. 505, 509 (1999). Here, the jury were entitled to have a full picture of the witness's background and qualifications and how he became involved in the victim's care.
The final issue raised by the defendant relates to the testimony of a Department of Children and Families (DCF) social worker. After explaining that G. L. c. 119, § 51A, reports concern the suspicion of abuse and neglect, that they must be filed with the agency by certain mandated reporters, and how they are investigated, the witness testified that her involvement in this case began with a § 51A report. When asked who filed it, the witness replied "[t]here were several." There was no objection nor motion to strike. The witness's testimony continued about one particular incident in September, 2015, when the police found the victim locked out of her home in the cold at 11:30 P.M. The jury did not hear about the contents of any unrelated § 51A reports. Furthermore, in this case, there was direct testimony about numerous acts of physical abuse and neglect committed by the defendant over many years along with the involvement of DCF in the victim's family since she was an infant. A passing reference to more than one § 51A report having been filed was not prejudicial, and certainly did not create a risk of a miscarriage of justice.
Judgments affirmed.